UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

POW NEVADA, LLC,

   Plaintiff,

  v.

ANNETTE CONNERY,

   Defendant.

CASE NO. C17-1649 RSM

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST ANNETTE CONNERY (DOE 1)

## I. INTRODUCTION

This matter comes before the Court on Plaintiff's Motion for Default Judgment against Annette Connery (Doe 1). Dkt. #36. Having reviewed the relevant briefing and the remainder of the record, Plaintiff's Motion is granted in part for the reasons discussed below.

## II. BACKGROUND

Plaintiff's alleges that Defendant utilized a BitTorrent file sharing protocol to illegally copy and download Plaintiff's copyrighted motion picture, *Revolt*. Dkt. #1 at ¶¶ 1, 5. Plaintiff initiated suit against 12 "Doe" defendants, identified by Internet Protocol ("IP") addresses that, at a particular time, accessed a unique identifier associated with a digital copy of *Revolt*. *Id.* #1 at ¶¶ 10–17. On November 27, 2017, the Court issued an Order to Show Cause why the Court should not "sever all defendants except the first defendant in this case" and "dismiss the remaining defendants." Dkt. #8. The Court subsequently severed Plaintiff's claims against all but the first named Doe defendant. Dkt. #15.

ORDER – 1

In response to serious concerns related to BitTorrent litigation within the District, the Court issued another Order to Show Cause on February 2, 2018. Dkt. #19; *see also Venice PI, LLC, v. O'Leary*, C17-988TSZ, Dkts. #27 and #32 (W.D. Wash. 2017). Following resolution of that Order to Show Cause, Plaintiff was permitted to seek expedited discovery from an internet service provider ("ISP") to obtain subscriber information for the relevant IP address. Dkt. #26. Plaintiff filed an Amended Complaint against Defendant. Dkt. #29. Defendant never participated in this action and default was entered. Dkt. #35. Plaintiff now seeks default judgment. Dkt. #36.

### III. DISCUSSION

Based on this Court's Order of Default and pursuant to Rule 55(a), the Court has the authority to enter a default judgment. Fed. R. Civ. P. 55(b). However, prior to entering default judgment, the Court must determine whether the well-pleaded allegations of a plaintiff's complaint establish a defendant's liability. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In making this determination, courts must accept the well-pleaded allegations of a complaint, except those related to damage amounts, as established fact. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). If those facts establish liability the court may, but has no obligation to, enter a default judgment against a defendant. *Alan Neuman Prods. Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) ("Clearly, the decision to enter a default judgment is discretionary."). Plaintiffs must provide the court with evidence to establish the propriety of a particular sum of damages sought. *Televideo*, 826 F.2d at 917–18.

A. <u>Liability Determination</u>.

The allegations in Plaintiff's Amended Complaint establish Defendant's liability for copyright infringement. To establish copyright infringement, Plaintiff must demonstrate

ownership of a valid copyright and that Defendant copied "constituent elements of the work that are original." *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Here, Plaintiff alleges it owns the exclusive copyright to the motion picture *Revolt*. Dkt. #29 at ¶¶ 5–8. Plaintiff also alleges that Defendant participated in a "swarm" that unlawfully copied and/or distributed the same digital copy of *Revolt*. *Id.* at ¶¶ 9, 18–23, 27. Because Defendant did not respond to Plaintiff's Amended Complaint, the Court must accept the allegations in Plaintiff's Amended Complaint as true. *See* Fed. R. Civ. P. 8(b)(6). Accordingly, Plaintiff has established Defendant's liability.

B. Default Judgment is Warranted.

The Court must next determine whether to exercise its discretion to enter a default judgment. Courts consider the following factors in making this determination:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471-72.

The majority of these factors weigh in favor of granting default judgment against Defendant. Plaintiff may be prejudiced without the entry of default judgment as it will be left without a legal remedy. *See Landstar Ranger, Inc. v. Parth Enters, Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) (finding plaintiff would suffer prejudice where denying default judgment would leave plaintiff without remedy). Plaintiff's Amended Complaint is also sufficient and Defendant did not present any evidence or argument to the contrary. Additionally, the Court finds there is a low probability that Defendant's default was due to excusable neglect; Defendant

ORDER – 3

was given ample opportunity to respond to the filings in this matter between the time she was served with Plaintiff's Amended Complaint and when Plaintiff filed its Motion. Finally, although there is a strong policy favoring decisions on the merits, Defendant's failure to respond to Plaintiff's motions may be considered an admission that Plaintiff's motions have merit. *See* Local Civil Rule 7(b)(2) ("[I]f a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit.").

However, the Court acknowledges that a dispute concerning the material facts alleged by Plaintiff may arise. *See Qotd Film Inv. Ltd. v. Starr*, No. C16-371RSL, 2016 WL 5817027, at *2 (W.D. Wash. Oct. 5, 2016) (acknowledging that dispute concerning material facts may arise in BitTorrent infringement cases). The Court also notes that the amount at stake is likely not a modest sum for Defendant, as Plaintiff contends. Plaintiff seeks the minimum statutory damages award of $750, attorneys' fees of $3,906.50, and costs of $525. Dkt. #36 at 5; Dkt. #37 at ¶¶ 10–12. Notwithstanding these considerations, the *Eitel* factors weigh in favor of granting default judgment against Defendant.

C. Appropriate Relief.

The Court next considers what relief to grant Plaintiff. Plaintiff seeks the following three categories of relief from Defendant: (1) permanent injunctive relief; (2) statutory damages; and (3) attorneys' fees and costs. Each category is discussed in turn below.

i. *Permanent Injunctive Relief*

Permanent injunctive relief is proper in this matter. Courts may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Courts may also order the destruction of all copies of a work made or used in violation of a copyright owner's exclusive rights. 17 U.S.C. § 503(b). Given

ORDER – 4

the nature of the BitTorrent system, and because Defendant has been found liable for infringement, Defendant possesses the means to continue infringing. *See MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993) (granting permanent injunction where "liability has been established and there is a threat of continuing violations"). Consequently, the Court grants Plaintiff's request, enjoins Defendant from infringing Plaintiff's rights in *Revolt*, and orders Defendant to destroy all unauthorized copies of *Revolt*.

    ii. *Statutory Damages*

The Court also awards statutory damages of $750 for Defendant's infringement of *Revolt*. The Copyright Act allows a plaintiff to choose between actual or statutory damages. *See* 17 U.S.C. §§ 504(b), (c)(1). An individual infringer, infringing on one work, may be liable for a sum ranging from $750 to $30,000. 17 U.S.C. §504(c)(1). The Court has "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima," and they can take into account whether "the recovery sought is proportional to the harm caused by defendant's conduct." *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1355 (9th Cir. 1984). Recently, this Court has awarded statutory damages of $750 in similar actions, and finds that $750 is an appropriate award here. *See, e.g. LHF Prods. Inc. v. Doe 1*, C16-1354RSM, Dkt. #65 at 6–7 (W.D. Wash. Aug. 7, 2018) ($750 statutory damages with eight defendants jointly and severally liable). Plaintiff requests only $750 and, more importantly, the Ninth Circuit has determined that an award of $750 is appropriate. *LHF Prods. Inc. v. Doe 1*, ___ F. App'x ____, 2018 WL 3017156 (9th Cir. June 18, 2018).

    iii. *Attorneys' Fees and Costs*

Finally, Plaintiff asks the Court to award $3,906.50 in attorneys' fees and $525 in costs. Dkt. #37 at ¶¶ 10–12. Pursuant to 17 U.S.C. § 505, the Court "in its discretion may allow the

ORDER – 5

recovery of full costs by or against any party," and "may also award a reasonable attorney's fee to the prevailing party as part of the costs." When making fee determinations under the Copyright Act, courts consider "(1) the degree of success obtained, (2) frivolousness, (3) motivation, (4) objective unreasonableness (legal and factual), and (5) the need to advance considerations of compensation and deterrence." *Smith v. Jackson*, 84 F.3d 1213, 1221 (9th Cir. 1996) (citing *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994)). Because Plaintiff has succeeded on its non-frivolous claims, and because at least a partial award would advance considerations of compensation and deterrence, the Court agrees that Plaintiff should be awarded attorneys' fees.

However, Plaintiff's attorneys' fees request is problematic. Courts determine fee award amounts by first determining a "lodestar figure" by multiplying the number of hours reasonably expended on a matter by a reasonable hourly rate. *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). Courts may then adjust the lodestar with reference to factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975). The relevant *Kerr* factors here are: (1) the time and labor required; (2) the novelty and difficulty of the questions; and (3) the skill requisite to perform the legal services properly. "The lodestar amount presumably reflects the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation." *Intel*, 6 F.3d at 622. Given the nature of the work done by Plaintiff's counsel, Mr. Lowe, the Court does not find Plaintiff's requested hourly rate, or the number of hours requested, to be reasonable.

1. *Reasonableness of Rate Requested*

In the Ninth Circuit, the determination of a reasonable hourly rate "is not made by reference to rates actually charged the prevailing party." *Chalmers v. City of Los Angeles*, 796 F.2d 1205 (9th Cir. 1986). Instead, the reasonable hourly rate is determined with reference to

the prevailing rates charged by attorneys of comparable skill and experience in the relevant community. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Courts may also consider "rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney" as "satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Plaintiff argues that $450 is a reasonable rate for "non-formulaic legal work" and requests $350 for Mr. Lowe's routine work. Dkt. #36 at 4–6; Dkt. #37 at ¶¶ 7–9. However, similar cases in this District suggest that an hourly rate of $450 is not appropriate. *See Qotd Film*, 2016 WL 5817027 at *3-4 (refusing to award requested rate of $450 where Mr. Lowe did not present evidence that this was prevailing community rate). Further, in other BitTorrent cases litigated by Mr. Lowe, this Court has awarded hourly rates of $300 for similar, if not identical, work. *See LHF Prods. Inc. v. Doe 1*, C16-1354RSM, Dkt. #65 at 8–10 (W.D. Wash. Aug. 7, 2018) (hourly rate of $300 appropriate in nearly identical case); *Dallas Buyers Club, LLC v. Nydam, et al.*, 2016 WL 7719874 at *5–6 (W.D. Wash. Aug. 8, 2016) (same). In *Dallas Buyers Club*, the Court reasoned that an hourly rate of $300 is appropriate because the cases litigated by Mr. Lowe, similar to this action, did not require extensive skill or experience, utilized recycled pleadings from other cases, and were largely unopposed. *Id.* at *6. More importantly, this Court's prior determination that $300 represents a reasonable hourly rate for Mr. Lowe's work in nearly identical cases has been approved by the Ninth Circuit.[1] *LHF Prods. Inc.*, 2018 WL 3017156 at *1–2. Accordingly, the Court will apply an hourly rate of $300 for work in this case.

---

[1] The general surveys relied upon by Mr. Lowe, Dkt. #37 at ¶ 7, are not inconsistent with the reasonable hourly rate set by the Court for this type of work performed within the District.

ORDER – 7

2. *Reasonableness of Hours Requested*

The party seeking fees "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The Court excludes hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary." *Id*. at 434. Here, Mr. Lowe requests an unreasonable number of hours, seeking compensation for 9.5 hours he allegedly spent on work related to Defendant's case. Dkt. #37 at ¶ 10. Mr. Lowe also requests fees for the time his legal assistant spent on Defendant's case (at an hourly rate of $145). *Id.* But Mr. Lowe's activity before this Court underscores the unreasonableness of this request.

Mr. Lowe has represented similar plaintiffs in over one hundred cases against more than a thousand Doe defendants. These cases have all proceeded in a similar manner. Each of the complaints are filed against multiple Doe defendants, identified only by IP addresses, for alleged infringement of the plaintiff's exclusive rights to a movie. Groups of Doe defendants are named in the same complaint because they allegedly infringed the same digital copy of the movie by participating in the same BitTorrent "swarm." After filing nearly identical complaints, plaintiffs file nearly identical motions for expedited discovery. Upon being granted leave, plaintiff serves subpoenas on the ISPs associated with each Doe defendant's IP address. Once the ISPs provide the Doe defendants' identities, Plaintiff files amended complaints. Except for the paragraphs identifying the Doe defendants, all of the amended complaints are nearly identical.

After filing amended complaints, plaintiffs may voluntarily dismiss claims against some named defendants—presumably because they agreed to pay the plaintiff a sum of money. If the claims are not settled, plaintiffs continue to pursue their claims against the named defendants. Many of the defendants fail to appear, answer, or defend. Plaintiffs then file motions for default

which generally differ only in the captions.  After default is entered, plaintiffs file nearly identical motions for default.

While there is nothing wrong with plaintiffs filing multiple infringement claims, it is wrong for plaintiffs' counsel to file identical complaints and motions with the Court and then expect the Court to believe that it spent *hundreds* of hours preparing those same complaints and motions.  *See Malibu Media, LLC v. Schelling*, 31 F. Supp. 3d 910, 912-13 (E.D. Mich. 2014) ("If Malibu Media is experiencing a massive invasion of infringers, it is entitled to seek redress through the courts.").  As this Court has previously noted in a nearly identical case, it was not reasonable for Mr. Lowe to assert that he spent 185 hours in preparing the filings for default judgments against fifty-one named defendants when the filings were essentially the same.  *LHF Prods. Inc. v. Doe 1*, C16-551RSM, Dkt. #70 at 12 (W.D. Wash. Feb. 15, 2017).

There is nothing unique, or complex, about engaging in what can only be described as "the essence of form pleading," and the Court will not condone unreasonable attorneys' fees requests.  *Malibu*, 31 F. Supp. 3d at 912-13 ("[T]here is nothing unique about this case against [defendant], it is quite a stretch to suggest that drafting and preparing the complaint for filing took more than an hour, or that 1.3 hours were spent on drafting a motion for default judgment."). Further, the Court finds it hard to believe that Mr. Lowe spent significant amounts of time preparing filings in this case as the filings are nearly identical to filings Mr. Lowe has previously used in other unrelated cases. *See, e.g.*, *LHF Prods. Inc. v. Doe 1*, C16-551RSM (W.D. Wash. 2016); *QOTD Film Investment Ltd. v. Doe 1*, C16-371RSL (W.D. Wash. 2016); and *Dallas Buyers Club, LLC v. Does 1-10*, C14-1684RAJ (W.D. Wash. 2014).

Instead of awarding the unreasonable number of hours requested by Plaintiff, the Court will award Mr. Lowe 2 hours, at an hourly rate of $300, to compensate his firm for the time he

ORDER – 9

worked on the case against Defendant.[2]  This amount is consistent with Mr. Lowe's work on similar cases.  The Court does note, however, that this case differed from others in that it progressed against a single defendant from an early point and Plaintiff therefore saw no "economy of scale" and needed to revise certain form documents.  Accordingly, the Court finds that one-half hour of additional time, at an hourly rate of $300, is reasonable in this case.  The Court will not award any of the time attributed to Mr. Lowe's legal assistant as review of the declaration submitted indicates that Mr. Lowe's legal assistant performed purely administrative tasks in this matter.  Dkt. #37 at ¶ 10 (descriptions include "[p]repare summons for process server" and "[s]end summons, amended complaint and exhibits to process server; Communication with process server").

    Mr. Lowe argues for an increased award on the basis that this case "was unique among other cases in that it involved additional work, including exceptional and complex work in responding to the Court's several Orders to show cause, and preparing, securing, and submitting eight (8) declarations in support of Plaintiff's claims."  Dkt. #36 at 6.  But again, these are documents that have substantial overlap with documents filed by Mr. Lowe in similar cases.  *See Venice PI, LLC, v. O'Leary*, C17-988TSZ, Dkts. #28–30, #33–39, and #41–44 (W.D. Wash.

---

[2] The Court has noted in related cases that Mr. Lowe's time appears inflated.  Mr. Lowe filed motions for default in five related cases before this Court on the same day—July 2, 2018.  *See LHF Prods. Inc.* Case Nos. C16-551RSM, C16-1017RSM, C16-1089RSM, C16-1090RSM, and C16-1588RSM.  Combined, the motions sought default judgment against 21 defendants.  With regard to each defendant in those cases, Mr. Lowe claimed to have spent precisely 0.7 hours on the motions for default on July 2, 2018—itself odd.  *See e.g.*, C16-1588RSM, Dkt. #61-1 at ¶ 11.  Accordingly, Mr. Lowe claimed to have billed 14.7 hours on that day.  While not outside the realm of possibility, the Court has some concern as to the accuracy of this contention.  Plaintiff's last motion for default judgment was filed at 7:14 p.m. on July 2, 2018.  *See* C16-1588RSM, Dkt. #59.  Thus, giving Mr. Lowe the benefit of the doubt and assuming that he worked continuously and took no breaks during the day, he began working at 4:32 a.m.  While possible, the hours may also be inflated.  Mr. Lowe claims a larger amount of time was spent preparing the Motion for Default Judgment in this case.  Dkt. #37 at ¶ 10.

2017). More importantly, the work was not necessary due to the actions of Defendant. Rather, the Court justifiably expressed concerns over ongoing BitTorrent litigation within the District, warranting proof by Plaintiff and Plaintiff's counsel that such cases are procedurally and factually proper. Plaintiff's responses to the Court's show cause orders may have been technically necessary to its success against Defendant as the Court may have dismissed the action had Plaintiff failed to respond. But the responses were not otherwise necessary to advance Plaintiff's unopposed claims against Defendant.

Likewise, an award of attorneys' fees against Defendant for this portion of counsel's work would not advance the purposes of the Copyright Act. *Magnuson v. Video Yesteryear*, 585 F.3d 1424, 1432 (9th Cir. 1996) ("in considering motions for attorney's fees . . . the district court should 'seek to promote the Copyright Act's objectives'"). Forcing Defendant to bear the expense of work caused by the Court's justifiable trepidations about a class of cases would not have a deterrent effect any more than an unreasonably large award of statutory damages and would serve to make fee awards arbitrary. Conversely, the Court believes that the purposes of the Copyright Act will be advanced by assuring that enforcement of the Act is fair, complies with legal requirements, and treats defendants consistently for similar conduct.[3]

Accordingly, the Court has adjusted Plaintiff's request of 9.5 hours to 2.5 hours at an hourly rate of $300. The Court is satisfied that an attorneys' fee award of $750 is reasonable and

---

[3] The Court notes that Plaintiff does not allege that Defendant's underlying conduct in this case is different than the conduct of other defendants in similar BitTorrent cases within this District. *Compare Glacier Films v. Turchin*, -- F.3d ---, 2018 WL 3542839 (9th Cir. 2018) (district court abused discretion by awarding minimum statutory damages fees and no attorneys' fees where plaintiff established defendant's continued and numerous violations). Here, the Court's award of attorneys' fees puts the total amount paid by Defendant ($2,025) slightly above similar cases before the Court. For example, in a series of cases brought by *LHF Prods. Inc.*, the Court entered judgments against individual defendants ranging from $1,520-$1,820. *See e.g.* C16-551RSM, Dkt. #91 ($1,788); C16-1648RSM, Dkt. #36 ($1,520); C17-254RSM, Dkt. #28 ($1,680).

ORDER – 11

sufficient to cover Mr. Lowe's form-pleading work in this case. The Court also finds that the requested costs of $525 are properly recovered from Defendant in full. Dkt. #37 at ¶ 12.

### IV. CONCLUSION

The Court, having reviewed the relevant briefing and the remainder of the record, finds adequate bases for default judgment. Accordingly, the Court hereby finds and ORDERS:

1. Plaintiff's Motion for Default Judgment against Annette Connery (Doe 1) (Dkt. #36) is GRANTED IN PART.

2. Defendant is hereby permanently enjoined from directly, indirectly, or contributorily infringing Plaintiff's exclusive rights in the motion picture film *Revolt*, including without limitation by using the Internet to reproduce or copy *Revolt*, to distribute *Revolt*, or to make *Revolt* available for distribution to the public, except pursuant to lawful written license or with the express authority of Plaintiff.

3. To the extent any such material exists, Defendant is directed to destroy all unauthorized copies of *Revolt* in her possession or subject to her control.

4. Defendant Annette Connery is individually liable for statutory damages in the amount of $750.00, attorneys' fees in the amount of $750.00, and costs in the amount of $525.00.

IT IS FURTHER ORDERED that the Clerk of the Court shall enter judgment consistent with this Order.

DATED this 17th day of August 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE